FIDELITY MUTUAL LIFE ASSOCIATION v. GERMANIA BANK.

November 3, 1898.

Nos. 11,275—(41).

Bank—Deposit as Collateral Security—Finding Sustained by Evidence.

> Evidence considered, and *held* sufficient to sustain the finding of the trial court to the effect that a deposit made by plaintiff with the defendant was to secure it for any money loaned to the plaintiff's manager on any paper discounted by the defendant for him.

Action in the district court for Ramsey county to recover $500. The facts are stated in the opinion. The cause was tried before Brill, J., without a jury, and judgment was ordered in favor of defendant. From an order denying plaintiff's motion for a new trial, it appealed. Affirmed.

*Warner, Richardson & Lawrence,* for appellant.

*O. E. Holman,* for respondent.

START, C. J.

This was an action to recover a deposit of $500 made by the plaintiff with the defendant. The defense was that the deposit was security for the indebtedness of the plaintiff's general manager at St. Paul, W. A. Crawford. Findings and conclusions of law in favor of the defendant, and the plaintiff appealed from an order denying its motion for a new trial.

The here material facts found by the trial court are:

The plaintiff, to enable W. A. Crawford, its agent and manager, to obtain money from the defendant bank, deposited with it on January 30, 1894, the sum of $500, and agreed with it that the same should be security for money which might be advanced or loaned by it to such agent upon his promissory note or the notes of other persons, and that it should remain with the defendant so long as the defendant was discounting notes or bills for such agent and until the sum so advanced or loaned was paid. On February 3, 1894, Crawford made his note for $500, payable to the order of the defendant, and it discounted the note, advanced and loaned the

amount thereof to him. That no part of the note has ever been paid, but the same has been renewed from time to time, the last renewal being on August 4, 1896. The plaintiff on September 23, 1896, drew its check on defendant for the amount of the deposit, which was presented for payment and was refused.

At the time of the execution and delivery of the note to defendant, and as part of the same transaction, Crawford indorsed and delivered to defendant as collateral certain promissory notes made by policy holders of plaintiff for premiums on insurance policies issued by plaintiff, some of which notes were payable to plaintiff, and others to Crawford as general manager of plaintiff, and some to Crawford personally. The collateral notes are still held by the defendant, except that some thereof have been replaced by other notes to Crawford, which are held in place of those originally delivered to defendant. It is to be noted that there is no finding that anything was ever paid on the collaterals, and turned over to Crawford, or that his note to the defendant was renewed, and the time of payment extended, and a substitution of collaterals had, without plaintiff's knowledge or consent. Nor was the trial court requested to find on these questions; hence it did not err in its conclusion of law that the plaintiff was not entitled to any relief.

1. The real question in this case is whether the finding of the trial court, to the effect that the plaintiff's deposit was security for money which the defendant might loan or advance to Crawford upon his notes or the notes of other persons, is sustained by the evidence. The evidence on this question was largely documentary. On January 27, 1894, the plaintiff mailed to defendant its check for $500, to be placed to its credit on the following terms:

"That it be subject to call by us, but we agree, in consideration of the interest paid us by Mr. W. A. Crawford, not to check against it so long as you are employing the money in discounting paper for him, it being understood that you are responsible to us for the amount of the deposit."

The defendant acknowledged receipt of the check on January 30 in these words:

"We have your favor of the 27th, enclosing check for $500 to be placed to your credit as a guaranty for the payment of such paper

which Mr. Crawford may discount at this bank. This deposit is subject to call by you, less the amount used in discounting paper for Mr. Crawford."

On February 3 the plaintiff replied to the effect that the bank had misunderstood its proposition as to the deposit; that the spirit thereof was to furnish the bank with a capital to accommodate plaintiff's representative with discount, and that if this was not satisfactory to return the deposit. After accepting the deposit, and before the bank received this second letter, it discounted Crawford's note for $500, in consequence of the deposit and the letter accompanying it. And on February 7, 1894, it wrote to plaintiff in reply to its letter of February 3, reciting the defendant's understanding of the terms of the deposit, and closed with these words:

"If you do not understand it that way, we wish you would request Mr. Crawford to take up the paper, amounting to $500, and then your deposit is subject to call at any time."

The plaintiff made no reply to this letter, and the deposit remained with the defendant until September 19, 1896, when plaintiff wrote to the bank as follows:

"In re Special Deposit. With Mr. W. A. Crawford's discontinuance as manager for this association, the reason for the special deposit which we have been keeping in your bank no longer exists, and we will therefore not feel obliged to maintain this deposit longer, unless you know of some reason to the contrary."

This correspondence and the conduct of the parties with reference to the deposit, are sufficient to sustain the finding of the trial court. The terms of the deposit, as stated by the plaintiff, were ambiguous, but the defendant parted with its money in reliance upon them as it understood them; and when the plaintiff was informed thereof, and of the defendant's insistence on its understanding of the terms of the deposit, and of its wish that if it was not satisfactory the plaintiff request its manager to take up the paper discounted, and then the deposit would be subject to call at any time, it kept silent for more than 2½ years. It was only after Crawford ceased to be its manager that the plaintiff sought to withdraw the deposit. The trial court might well have found

from the plaintiff's conduct that it acquiesced in the construction of the terms of the deposit given to them by the defendant when it discounted Crawford's note.

2. It is also assigned as error that the court's finding that Crawford was authorized to take notes in payment of premiums upon policies of insurance issued by plaintiff is not sustained by the evidence. It is not necessary to inquire whether it is or not, for it is immaterial, in view of the fact that there were no limitations as to the character of the paper to be discounted for him. The terms of the deposit were that it was to remain so long as the bank was employing the money discounting paper for him. This included either his own paper or that of others, whether taken for insurance or not.

3. The plaintiff on the trial asked leave to amend its complaint so as to allege that on January 4, 1897, the defendant made an assignment under the insolvency laws of this state. This was refused by the court on the ground that it was immaterial. The ruling was correct. The legal rights of the respective parties could not be affected by the assignment.

The court permitted the defendant to amend its answer so as to allege that at the time it discounted the original notes it took collaterals, as stated in the findings of the court. This was a matter of discretion, and the court did not err in allowing the amendment.

Order affirmed.